UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff

v.                                                 CASE NO. **0:21-cr-60124**

ROBERT CHARLES CLARK,

    Defendant.
_____/

## **DEFENDANT ROBERT CHARLES CLARK'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Pursuant to Title 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Section 6A1.3 of the United States Sentencing Guidelines, the Defendant, ROBERT CHARLES CLARK, ("CLARK"), by and through the undersigned attorney, hereby files the following objections to the Presentence Investigation Report (hereinafter, the "PSI"), prepared by the United States Probation Office for the Southern District of Florida. Undersigned counsel objects to the PSI with regard to CLARK's acceptance of responsibility, sentencing points, and factors that may warrant departure or variance. Specifically, undersigned counsel objects to paragraphs 30, 32, 33, and 180 of the PSI because the recommendations and descriptions provided are either incorrect, incomplete, or misleading and provide a false portrayal of CLARK's activity both before and after the conduct at issue in this case, possibly subjecting him to an unfair sentence and fine. As set forth in *United States v. Booker*, the primary objective of sentencing is to provide a sentence that is "sufficient but not greater than necessary…" to achieve the primary objectives of sentencing. 543 U.S. 220 (2005).

**I.     INTRODUCTION**

Defendant CLARK pleaded guilty to Count I of a nine count indictment, with CLARK not being named in Counts II - IX. Count I of the indictment charged CLARK with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349. The Probation Officer and the Government have provided documentation of the details of the crime. However, the PSI makes incorrect and incomplete statements that need to be corrected regarding CLARK's crime and circumstances. These corrections will enable him to properly defend himself and help to ensure he will not receive an unfairly prejudicial sentence. Since his arrest, CLARK has taken responsibility for his actions, has pleaded guilty in a timely fashion, and remains hopeful that this Court will take these and other mitigating factors into consideration when deciding upon his sentence.

**II.    THE PSI IS INCORRECT REGARDING DETAILS RELEVANT TO CLARK'S ACCOUNTABILITY FOR THE VICTIM'S LOSS AND FACTORS THAT MAY WARRANT A DEPARTURE OR VARIANCE.**

U.S. Probation Officer Clifford H. McKinney, Jr. has written an extensive PSI regarding the Defendant CLARK's activity in the instant case. However, the PSI is unfairly prejudicial against CLARK if considered during the sentencing proceedings against him because it features incorrect and incomplete facts, as well as recommendations that ignore key facts, that could result in a greater sentence or fine for CLARK. A defendant, even one who pleads guilty, has a due process right to reasonably contest errors in the pre-sentence investigation report that affect the sentence. *United States v. Lee*, 653 F. 3d 170 (July 26, 2011). Defendant CLARK objects to paragraphs 30, 32, 33, and 180 and points to *Lee* as a basis of his objection.

Undersigned counsel does not dispute that the court should be allowed consideration of such a breadth of information to ensure that the punishment will suit not merely the offense but the individual defendant. *United States v. Delacruz*, 862 F. 3d 163 (2d Cir. 2017). However, that

information must be relevant to the defendant. While principles of due process do not bar the sentencing judge from considering any and all information that reasonably might bear on the proper sentence for the particular defendant, what the Due Process Clause does require is that a defendant not be sentenced on the basis of materially untrue assumptions or misinformation, and that he have an opportunity to respond to material allegations that he disputes, in order to ensure that the court not sentence him in reliance on misinformation. *Id.*; US. Const. amend. V.

It is well established that a defendant has a due process right not to be sentenced on the basis of information that is materially false, and that right is protected by affording the defendant notice of and an opportunity to respond to information on which the court intends to rely in imposing a sentence. *See Townsend v. Burke,* 334 U.S. at 741; *United States v. Berndt,* 127 F.3d 251, 257 (2d Cir. 1997). It is also well established that, subject to that protection, the judge's discretion in sentencing is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446 (1972). Undersigned counsel understands that a presentence report is meant to provide the court with information as to, *inter alia,* the circumstances of the offense, including the victim's version of the offense. *See Dorman v. Higgins,* 821 F.2d at 137–38 ("the goal of a complete compendium of all significant objective information means that the probation officer should not filter out any statements that are relevant"). A presentence report thus normally contains information from a variety of sources; the inclusion of hearsay statements is virtually inevitable; and "[t]he requirement of accurate reporting . . . may result in the inclusion in the report of statements that are themselves inaccurate. Though verification of the information collected is desirable, verification simply is not always possible." *Id.* at 138. While the mere presence of hearsay or inaccurate information in a PSI does not constitute a denial of due process, the defendant should

be able to find anchors from which to defend himself or contest/limit any misleading or inaccurate allegations or statements made in the PSI. The defendant is afforded due process protection against sentencing for misinformation through his opportunity to challenge before the court any statement in the report that he contends is inaccurate.

Though the report is to be "as complete as possible," it is obvious that the probation officer cannot include every word that is said to him; some discretion must be exercised in his decision of what to report to the court. *See* AO *Presentence Report Monograph* at 4 ("it is the ability to select the pertinent data, to separate fact and inference, to draw out the subjective elements and to assess their relative importance that distinguishes the trained and skilled probation officer"). The probation officer is expected to report accurately the pertinent statements of such sources as codefendants, witnesses, complainants, and victims. *Id.* at 9; he must include any pertinent statements of the defendant's "spouse, or cohabiting partner, if any," though "[s]uch a person ... can be a biased source either against or in protection of the defendant," *Id.* at 13. The requirement of accurate reporting thus may result in the inclusion in the report of statements that are themselves inaccurate. Though verification of the information collected is desirable, verification simply is not always possible. *See id.* at 5, 13 (unverified information should be clearly labeled). *Dorman v. Higgins*, 821 F. 2d 133 (1987).

a. **The Government must prove by a preponderance of the evidence that the controverted information in the PSI is correct because the sentencing court may impose an unjust sentence otherwise.**

If a defendant alleges that the report is factually inaccurate in any respect, the sentencing court may not take the controverted part of the report into account in imposing a sentence unless it has found that the Government has established by a preponderance of the evidence, *see United States v. Lee,* 818 F.2d 1052 (2d Cir. 1987), that the controverted statements are accurate. *See* Fed.

R. Crim. P. 32(c)(3)(D). The court's finding, in writing, is then attached to the report. *Id.* Further, any determination by the sentencing court as to the accuracy of a controverted part of the presentencing report is subject to review on appeal to the circuit court. Thus, in sentencing, the presentence report prepared by the probation officer is subject to adversary scrutiny and at least two layers of judicial review.

Even use of the report by the Parole Commission is subject to safeguards that allow the defendant to test its accuracy. These include a hearing at which the defendant would have the opportunity to appear and testify on his own behalf with respect to the allegedly inaccurate statements. *See Ochoa v. United States,* 819 F.2d 366, 368 (2d Cir.1987), and the availability of a habeas corpus proceeding to challenge any allegedly unconstitutional use of the report. *See Kramer v. Jenkins,* 803 F.2d 896, 900–01 (7th Cir. 1986).

Undersigned counsel is objecting to the aforementioned paragraphs because of their general misinformation and error of facts regarding CLARK. Undersigned counsel objects and specifically directs this Court's attention to the following statements in the PSI as they are incorrect, overstated, or without factual evidence; the Government will need to prove by a preponderance of the evidence that the following statements in the PSI are true before this Court can accept them as true for the purpose of sentencing:

> **Paragraph 30:** Undersigned counsel objects to paragraph 30. The PSI states that CLARK was identified as a marketer for USA Healthcare. However, CLARK was never a marketer and never made any phone calls for USA Healthcare. As such, CLARK's only participation with and connection to USA Healthcare was selling to USA Healthcare the lists that contained potential patients' personal information ("PPI"); which were then used by co-Defendant Joseph Anthony Cavallo, who contacted the people whose information was listed. To reiterate, CLARK had no further connections with USA Healthcare.
>
> **Paragraph 32:** Undersigned counsel objects to paragraph 32. The PSI states that CLARK "obtained" PPI from someone who had access to individuals who were eligible for Tricare. The PSI fails to specify that this PPI was a client base purchased from a personal friend and subsequently sold to USA Healthcare. CLARK also objects to the statement in same

paragraph which accuses him of "recruit[ing]" the people who were included in the lists. CLARK's involvement with USA Healthcare stops at providing the lists that he purchased from different individuals. The probation office contradicts itself by writing in Paragraph 34 that CLARK had "a thumb drive from Andy," and that "Clark stated he will bring over more (meaning personal information) on Monday." CLARK's involvement in USA Healthcare was solely in selling the aforementioned lists to USA Healthcare – CLARK did not compile the lists, market for USA Healthcare, or "recruit" the people whose names were included in the lists.

**Paragraph 33:** Undersigned counsel objects to paragraph 33. The PSI states that the database containing the PPI was "authored" by one of CLARK's businesses. As stated in CLARK's objection to Paragraph 32, this database was purchased from a personal friend. As such, the information contained in the database was not "authored" by CLARK's business but was merely purchased for $10,000 from a personal friend who provided military payday advance loans. The only interaction CLARK had with this data was the purchase and sale of it – as addressed in CLARK's objection to Paragraph 32.

**Paragraph 180:** Undersigned counsel objects to paragraph 180. The PSI states that the probation office determined that the defendant should be accountable for a loss of $5,436,647 (the amount USA Healthcare received during the scheme). The probation office completely disregards the plea offer that CLARK accepted which stated the loss to be $247,294. While the government's recommendation is not binding on the probation office, the probation office fails to consider that USA Healthcare wrote checks to CLARK totaling $223,100. As previously mentioned, CLARK had no role in USA Healthcare other than providing the company with the PPI, as supported in Paragraph 1; to wit, "Clark **provided lists** that contained [PPI] to USA Healthcare." (Emphasis added). Justice would not be served by finding CLARK accountable for USA Healthcare's role in the scheme when he did not recruit for USA Healthcare, market for USA Healthcare, or work for USA Healthcare. CLARK only received payment in the amount of $223,100 solely for providing lists to USA Healthcare containing PPI.

Additionally, in looking at the characteristics of CLARK, the fact that he is a father of two young children should not be glanced over. CLARK provides for his children and pays the entirety of household bills which helps to create a safe and nurturing environment for his children. The interests of justice would not be served by holding CLARK accountable for a loss of $5,436,647 that he did not contribute to; and holding CLARK accountable only for the $247,294 would allow him to continue to pay the household bills for himself, his children, and his partner that would otherwise impose an extreme financial hardship on CLARK's partner – who is sparingly employed as a house cleaner.

These above-mentioned objections show that the original PSI does not tell the full story of and should not be used in sentencing without corrections first being made. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense would be sufficiently satisfied in the instant case through a sentence that goes below what the sentencing guidelines recommend, either through a downward departure or variance. Regardless of his sentence, defendant CLARK's life will be irrevocably altered by his guilty plea. His reputation will be forever stained by this case, and he hopes that through his family and friends' support, a positive attitude, and dogged determination, he will be able to better himself and help his community in the future.

## **CONCLUSION**

Wherefore, based on the foregoing reasons, CLARK respectfully requests that the Court provide a hearing requiring that the Government prove by a preponderance of the evidence the allegations made in the abovementioned paragraphs and/or remove and rewrite same paragraphs based on a newly written PSI with only the relevant and correct information regarding CLARK's actions included, and/or remove all erroneous descriptions of CLARK's actions and remove any and all inaccurate statements provided in the PSI, as well as provide any and all other relief this Honorable Court deems necessary and just.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

        Respectfully Submitted,

        MICHAEL D. WEINSTEIN, P.A.
        Email: MDW@mdwlawfirm.com

        **s/ Michael D. Weinstein**
        Florida Bar No. 157236
        12 S.E. 7th Street, Suite 713
        Fort Lauderdale, FL  33301
        Tel:    (954) 761-1420
        Fax:    (954) 761-1421
        Attorney for Defendant
        ROBERT CHARLES CLARK