UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case no. 21-60124-cr- GRAHAM
(formerly SMITH)

UNITED STATES OF AMERICA,

v.

JOSEPH ANTHONY CAVALLO,
                  Defendant.
_____/

## AMENDED MOTION TO DISMISS INDICTMENT WITH PREJUDICE BECAUSE OF DISCOVERY VIOLATIONS

NOW COMES Defendant Cavallo, through his undersigned counsel, and states:

1. Mr. Cavallo respectfully requests the Court to dismiss with prejudice his *Indictment* (Counts 1, 2 and 3) based on the government's disclosure on November 10, 2022, of the January 23, 2017, GoDaddy search warrant and the resultant seizure of the server/digital files of Complete Healthcare Concierge, Inc. ("CHC") and LifeMD.

2. The nearly 6-year late disclosure consists of 422,954 total emails of Mr. Cavallo and all the charged defendants in the *Indictment* (and others) on the GoDaddy drive. This voluminous discovery was provided *after* jury selection, and is prejudicial to all 3 defendants in trial. These materials are too many for defense counsel to review during trial.

1

3.	There are early indications from a cursory review these digital files include *Brady, Giglio*, *Agurs*, *Napue* materials, attorney-client privileged communications, and other items which would (a) exculpate Mr. Cavallo, (b) help establish his theory of defense, and (c) provide impeachment materials of government witnesses. The only just remedy is for the Court to dismiss the *Indictment* against all 3 defendants.

4.	The following chronology will help the Court to evaluate the prejudice to Mr. Cavallo and his co-defendants:

| Date | Event |
|---|---|
| June 2013 | Complete Healthcare Concierge, Inc. formed ("CHC") |
| 2013 | CHC begins storage of its officers' and employees' emails on GoDaddy account |
| Jan. 2014 | Wire fraud conspiracy begins (per Count 1 of *Indictment* ) |
| 2014 | Money laundering conspiracy begins (Count 3 of *Indictment*) |
| March 2015 | CHC installs servers at its office |
| Nov. 2015 | **1st Search Warrant executed at CHC**<br>Server seized<br>Cell phones seized of Defendant Jason Faley and former co-defendant, now gov't witness Mark Vollaro |
| May 25, 2016 | Wire fraud conspiracy ends (per Count 1 of *Indictment*) |
| July 2016 | Money laundering conspiracy ends (per Count 3 of *Indictment*) |

| Date | Event |
|---|---|
| Dec. 29 2016 | Wire fraud conspiracy ends (per Count 2 of *Indictment*) |
| Jan. 23, 2017 | **GoDaddy search warrant**<br>Special Agent Brian Hill (Dept. of Defense) swears out Affidavit for a search warrant (with aid of AUSA Bernstein) to obtain all CHC and LifeMD digital/computer records on GoDaddy account |
| Jan. 23, 2017 | SA Hill and AUSA Stewart prepare search warrant and Affidavit; SA Hill executes search warrant on CHC offices, obtains CHC and LifeMD computer hard drive/digital files; no agent reports written after search to show its execution or inventory of items seized |
| Jan. 23, 2017 – July 2020 | CHC and LifeMD hard drive obtained from Jan. 23, 2017, search sits in evidence (contents not reviewed by SA Hill or AUSA Stewart, or anyone for the gov't) |
| July 2020 | SA Hill leaves South Florida |
| Nov. 3, 2022 | AUSA Wood/gov't on notice it has GoDaddy drive with CHC and LifeMD hard drive/digital records |
| Nov. 7, 2022 | Jury is selected in *U.S. vs Jason Faley, Joseph Cavallo, Benjamin Heath* |
| Nov. 7, 2022 | After jury is released for the day, prosecutor tells defense attorneys of existence of GoDaddy Jan. 23, 2017, search warrant and digital records seized |
| Nov. 10, 2022 | Copy of GoDaddy drive is delivered by SA Lawson to the offices of the defendants' attorneys |
| Nov. 10, 2022 | Hurricane Nicole hits South Florida (state offices, schools, etc. closed) |
| Nov. 11, 2022 | Veteran's Day – Holiday (Court closed – Law Offices closed) |

3

| Date | Event |
|---|---|
| Nov. 12, 2022 | Counsel for Defendant Jason Faley moves for sanctions for Rule 16 discovery violation (i.e. late disclosure of GoDaddy hard drive) |
| Nov. 14, 2022 | Jury sworn– opening statements given by all defendants |
| Nov. 16, 2022 | Court orders gov't to assemble a team to review and report back on the digital records seized from the Jan. 23, 2017, GoDaddy search warrant |
| Nov. 17, 2022 | **The gov't reports to the Court** : <br> 1. The prosecution cannot specifically search for *Brady* or *Giglio* materials <br> 2. The prosecution needs time to establish a format to do its digital review <br> 3. There may be emails regarding attorney-client communications, and they will need a "taint team" to review the contents of the drive to segregate attorney-client communications <br> 4. There are about 422,954 total emails on the GoDaddy drive (some may be duplicates) <br> 5. There are about 304,811 "relevant" emails <br> 6. Between Nov. 2015 – Dec. 2016, there are 213,369 emails <br> 7. There are 61,207 emails in the folders of Defendant Jason Faley (about 25,985 may be duplicates) <br> 8. There are 131,900 emails in the folders of co-defendant government witness, Mark Vollaro. |

| Date | Event |
|---|---|
| Nov. 17, 2022 | **The gov't reports to the Court** (cont'd):<br>9. The co-defendants in this *Indictment* (including Noah Silverman, Alex Silverman, Chris Mucha, Joel McDermott, Tim Clinton, Mark Vollaro, Anthony Loveland, Luis Garcia, Margaret "Megann" Chiasson, James Engimann, Antonio Gousgounis, Christopher Margait) and all civilian witnesses involved may have an email account (or be on emails) in the GoDaddy hard drive; 14 gov't witnesses are included in emails,<br>3 gov't witnesses are not included |
| Nov. 17, 2022 | Defendants' argued *ore tenus Motion To Dismiss Indictment* based on discovery violations (i.e. late disclosure of GoDaddy search warrant and results) |
| Nov. 18, 2022 | Court requests defense counsel to provide it any *Brady, Giglio, Napue* materials, etc., or attorney-client privilege communications, the defense finds in its first limited review of the GoDaddy hard drive |

**Mr. Cavallo's cursory review of the GoDaddy hard drive reveals *Brady, Giglio, Napue* materials, etc., and attorney-client privilege communications**

In response to the Court's request, counsel for Mr. Cavallo was only able to conduct a limited review of the GoDaddy hard drive (i.e. less than 1% of the 422,954 emails). But this review has revealed *Brady, Giglio, Napue* materials, etc., and attorney-client privilege communications.

Specifically, undersigned counsel's review has shown these items [followed in brackets by its impact on Mr. Cavallo and/or his co-defendants' defense]:

5

- Mr. Cavallo's August 10, 2015, 10:12 am email with attached resignation letter [document showing *when* he's leaving CHC; establishes withdrawal from conspiracy, and affirmative defense of statute of limitations]

- Mr. Cavallo's August 10, 2015 email with attached resignation letter found in email accounts of *other* CHC employees i.e. Vollaro, Faley, Loveland, Willson, Teng, Clancey [independent documents proving August 10, 2015 email was *actually sent* by Cavallo, and received by alleged co-conspirators] [establishes withdrawal from conspiracy, by notification to alleged co-conspirators]

- August 10, 2015, email from CHC employee Cam Willson to Mark Vollaro (CHC head and alleged co-conspirator), acknowledging Cavallo's resignation email and terminating Cavallo from company email server [establishes withdrawal from conspiracy, by notification to alleged co-conspirators]

- August 10, 2015, email from Mark Vollaro (CHC head and alleged co-conspirator) to employee Cam Willson, acknowledging Cavallo's resignation email and agreeing with Willson to terminate Cavallo from company email server [establishes withdrawal from conspiracy, by notification to alleged co-conspirators]

- August 6, 2015, email from Loveland (CHC employee alleged co-conspirator) to Cam Willson, copy to H. Lall regarding script pads; Cavallo on email

6

string, and says "Suck it" [shows Cavallo only does graphic design for script pads, and is upset with CHC – leading to his resignation]

- Emails from CHC employees and law firm(s) terminating the services of a call center who CHC believed wasn't performing according to CHC standards [because of undersigned counsel's concern for the sanctity of the attorney-client privilege, this reference is left purposely general][shows CHC good faith reliance on advice of counsel to market its products]

- Email from CHC Legal Assistant Katie Clancy to certain CHC employees advising an immediate change in policy toward selling/marketing in certain states, because those states' regulations prohibited such selling/marketing. [shows CHC good faith reliance on advice of counsel, and lack of criminal intent to market its products]

- Email communications between CHC employees and its attorneys regarding "safe harbor" considerations [because of undersigned counsel's concern for the sanctity of the attorney-client privilege, this reference is left purposely general][shows CHC good faith reliance on advice of counsel to market its products]

- Email of July 28, 2015, from CHC Legal Asst. Katie Clancy stating because of recent Florida legislation, CHC could no longer sell in Florida; this and many other CHC emails listed the "HIPAA compliant" language at the bottom

of the email [shows CHC good faith reliance on advice of counsel, and lack of criminal intent to market its products]

Because of the late disclosure of the GoDaddy hard drive, neither counsel for Mr. Cavallo nor co-defendants Faley and Heath mentioned the above items in their November 7 opening statements to the jury.

**Argument**

Standards of review

The standard of review for a *Giglio* error on direct review requires a defendant to show a reasonable likelihood the violation affected the judgment of the jury. *Occhicone v. Crosby,* 455 F.3d 1306, 1308-09 (11th Cir. 2006) (discussing the different appellate standard for *Brady* and *Giglio* claims). *See also Smith v. Sec'y, Dept. of Corrections,* 572 F.3d 1327, 1333-34 (11th Cir. 2009)(holding where the prosecution engages in deliberate deception, the standard favors granting relief).

In *Riechmann v. Fla. Dept. of Corrections,* 940 F.3d 559 (11th Cir. 2019), the Court reviewed the basic structure of a post-trial *Brady* claim. The Court held to show a Brady violation, a defendant must show: (1) the government had evidence favorable to the defendant, (2) the defendant does not have the evidence and could not obtain the evidence with any reasonable diligence, (3) the prosecution

suppressed the favorable evidence, and (4) had the evidence been disclosed to the defendant, there is a reasonable probability the outcome would have been different.

**Case law shows the late disclosure of the GoDaddy hard drive resulted in *Brady* and *Gigilo* violations, prejudicing Mr. Cavallo and his co-defendants**

The withholding of the digital information since 2017 by the government, entails *Brady* violations for Mr. Cavallo (and his 2 co-defendants) per *Riechmann*. During trial, Mr. Cavallo has found *Brady* information in those digital files as his resignation letter being found in the email account of 2 alleged co-conspirators, and 2 fellow employees. This resignation is the anchor of his withdrawal from the alleged conspiracy.

But the government did not disclose these resignation emails to Mr. Cavallo. Ironically, on November 7 during trial, government cautioned the undersigned if they asked Special Agent Hill on cross-examination about the resignation letter, the government would object. The objection would be based on the defense not having shown the metadata to support the resignation actually being sent by Mr. Cavallo. But the government *already had* this foundation evidence in its own possession via the GoDaddy drive. Prejudice to Mr. Cavallo? Certainly.

Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense. Imagine Mr. Cavallo's undue surprise at confronting 422,954 "new" emails during the first week of trial.

9

Inadvertence does not render a Fed. R. Crim. P. 16 and the Standing Discovery Order violation harmless; sanctions imposed as the result of a Rule 16 violation protect a defendant's right to a fair trial, not to punish the government's non-compliance. *United States v. Noe,* 821 F.2d 604 (11th Cir. 1987).

So whether it was the agent's fault for not reviewing the 2017 search results, or the prosecutor's inadvertence for not reviewing the complete file, is of no impact on the Court's decision to issue sanctions.

Fed. R. Crim. P. 26.2. and 18 U.S.C. § 3500 (the *Jencks* Act) also mandate the government must disclose discoverable information. Both were violated here.

Fed. R. Crim. P. 5(f) places the responsibility on federal prosecutors to turn over *Brady* materials to the defense. This responsibility is emphasized at *every* arraignment in the Southern District of Florida, and was specifically mentioned at Mr. Cavallo's (and his co-defendants') arraignments [DE 40] :

> It is ORDERED AND ADJUDGED that pursuant to the Due Process Protections Act, the Court confirms the obligation of the United States to produce all exculpatory and impeachment evidence to the defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and orders it to do so. Failing to do so in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court.

But the government chose to not turn over the results of its January 23, 2017, GoDaddy search warrant until *after* the jury was selected. This nearly 6-year delay defies the dictates of Rule 5(f).

The delayed disclosure of *Brady* material may be cause for reversal, but only if the defendant can show prejudice (i.e. the material came so late it could not be effectively used). *United States v. Bueno-Sierra,* 99 F.3d 375 (11th Cir. 1996). Impeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness. *United States v. Jordan,* 316 F.3d 1215, 1253 (11th Cir. 2003). Mr. Cavallo can't effectively use his just-received impeachment materials per *Jordan*, *supra*.

Similarly, in *United States v. Schwarz,* 11th Cir. Case no. 17-12274 (Sept. 29, 2020)(unpublished), the Court vacated Schwarz' convictions and remanded the case for a new trial. The *Schwarz* Court concluded the district court abused its discretion in denying Schwarz' several motions for continuance, which caused him to suffer substantial prejudice in presenting his defense (at p. 22).

Schwarz faced an SEC investigation with discovery which included 1,000 pages of his prior testimony, and at least 800,000 emails (at p. 13). This voluminous discovery was provided in stages to Schwarz just before trial, not *after* jury selection as at bar (p. 21).

The *Schwarz* Court noted its 25-year old admonition against the potential dangers of haste: "[A]n insistence upon expeditiousness in some cases renders the right to defend with counsel an empty formality. In our system of justice, the Sixth Amendment's guarantee to assistance of counsel is paramount, insuring the fundamental human rights of life and liberty." (at p. 19).

Counsel for the defendants at bar were not given the GoDaddy materials in time to exercise Mr. Cavallo's right to defend per *Schwarz, supra*.

In the now-famous *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court reversed a conviction on grounds of a *Brady* violation. The *Kyles* Court undertook a meticulous review of the evidence presented at trial and the evidence withheld by the prosecutor. It concluded the defendant's right to due process was violated, and reversed the conviction. The digital evidence withheld at bar also violated Mr. Cavallo's due process rights.

In *Wearry v. Cain,* 136 S. Ct. 1002 (2016), the Court held various inconsistent statements made a by a prosecution witness, coupled with information inconsistent with a prosecution witness's testimony, should have been disclosed. Similarly, the emails from the GoDaddy search have inconsistent statements of prosecution witnesses.

In *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987), the Court held information in a welfare department's file may fall within *Brady* and must be reviewed by the trial

court if requested by the defense. The *Ritchie* Court held if there is exculpatory information, it must be produced to the defense. In that vein, the CHC digital files must be reviewed for exculpatory evidence as requested by Mr. Cavallo and his co-defendants. But time does not permit that now.

### Prosecutorial misconduct here mandates dismissal

The Court already struck government witness, Dr. Ogon, because of the government's late disclosure of his cooperation agreement with District of New Jersey. On November 17, 2022, the prosecutor provided the July 12, 2018, cooperation agreement of government witness Robert Madonna. This shows a *pattern* of misconduct, which requires dismissal.

Counsel for Defendant Faley has recently made discovery requests of counsel for the government (i.e. help with technical matter regarding reading electronic discovery, etc.), But the help has not been provided.

District courts may exercise their discretionary power to dismiss an *Indictment* on grounds of prosecutorial misconduct where a sufficient showing of prejudice has been made. Prejudice to the defendant is an essential element when a defendant seeks dismissal of an indictment due to prosecutorial misconduct. *United States v. Accetturo*, 858 F. 2d 679 (11th Cir. 1988).

Whether outrageous government conduct exists turn upon the totality of the circumstances with no single factor controlling. *United States v. Michael,* 17 F.3d 1383 (11th Cir. 1994). In the investigative stage of a case, governmental misconduct might violate "that fundamental fairness, shocking to the universal sense of justice mandated by the due process clause of the Fifth Amendment". *United States v. Edenfield,* 995 F.2d 197 (11th Cir. 1993). The conduct of government counsel is denies the accused of fundamental fairness.

Undersigned counsel contacted counsel for Co-defendant Faley and Co-defendant Heath, who join in this *Motion.*

Government counsel oppose this *Motion.*

WHEREFORE, Defendant Cavallo prays this Court will grant his *Amended Motion to Dismiss Indictment With Prejudice Because of Discovery Violations.*

Respectfully submitted,

s/Paul Molle  
MOLLE LAW FIRM  
FL Bar # 116671  
Co-counsel for Defendant Cavallo  
110 SE 6th St. Ste. 1703  
Fort Lauderdale, FL 33301-5000  
Office: 954-522-7575  
Fax: 954-281-5881  
Email: pmolle@bellsouth.net

s/Michael Hursey  
MICHAEL HURSEY, P.A.  
Florida Bar No. 457698  
Co-counsel for Defendant Cavallo  
5220 S. University Dr., Suite C-110  
Ft. Lauderdale, FL 33328  
Phone: (954) 252-7458  
Fax: (954) 252-3353  
Email: mhpalaw@bellsouth.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** the foregoing has been given via CM/ECF this 21st day of November, 2022.

                                s/Michael Hursey
                                MICHAEL HURSEY, P.A.